J-S23044-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF B.G.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.R.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 198 WDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Mercer County Orphans' Court at No(s):
2017-308 A

| | | |
|---|---|---|
| IN RE: ADOPTION OF B.G. II T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.R.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 199 WDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Mercer County Orphans' Court at No(s):
2018-670 A

BEFORE:   BENDER, P.J.E., NICHOLS, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                              FILED MAY 8, 2019

In these consolidated appeals, Appellant, A.R.T. ("Mother"), appeals from the orders entered January 11, 2019, that terminated her parental rights to her children, B.G.T., born 2015, and B.G. II T., born 2018 (collectively, "Children"). We affirm.

_____
*   Retired Senior Judge assigned to the Superior Court.

The facts underlying this appeal are as follows. Due to Mother's mental health issues, B.G.T. was declared dependent and placed in foster care three days after her birth in December 2015. Trial Court Opinion at 3-4. B.G.T. refers to her foster parents as "Mom" and "Dad" and did not recognize Mother when they met in 2018. Id. at 3. "Since [B.G.T.]'s birth, [Mother] has not provided any parental duties, has not provided food, shelter, financial or emotional support." Id. On June 8, 2017, Mercer County Children and Youth Services ("MCCYS") filed a petition for involuntary termination of Mother's parental rights to B.G.T. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).

B.G. II T. was born in March 2018. Trial Court Opinion at 2. Due to Mother's "mental health issues and her incarceration[,]" id. at 5, B.G. II T. was also declared dependent three days after her birth and placed with the same foster parents as B.G.T. Id. at 4. "Mother has performed no parental duties for [B.G. II T.], and [B.G. II T.] has spent her entire life in foster care." Id. at 5. On November 13, 2018, MCCYS filed a petition for involuntary termination of Mother's parental rights to B.G. II T. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).

Since B.G.T. was declared dependent and throughout the entire time that Children have been in foster care, MCCYS had a family service plan in place for Mother, requiring that she accomplish the following objectives:

A. Mother needed to address her mental health issues.

- 2 -

B. Mother needed to, after becoming stabilized, locate safe and secure housing.

C. Mother would cooperate with parental supports that would be put in place to assist [M]other's parenting of the [C]hildren.

D. That [M]other identify the fathers.

It was necessary that the mental health issues be addressed before housing and parenting issues could be resolved. Although [M]other has been at Warren State Hospital and Torrance State Hospital and is currently at Warren State Hospital, her mental health issues have not been remedied to the point that she was stabilized such that she could secure housing and/or participate in the parental supports.

There was a period of time in the spring of 2016 when [M]other was not incarcerated or in a mental health institution. During that time she spent some of the time living in a hotel and was otherwise a transient. . . .

Mother was never able to identify the fathers or potential fathers of [Children].[1]

Trial Court Opinion at 6-7 (some formatting).

A joint evidentiary hearing was held for both termination petitions. Both a guardian ad litem and a child advocate were present to represent the best interests and the legal interests of Children. See In re L.B.M., 161 A.3d 172, 173-75, 180 (Pa. 2017) (courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding; a child's legal interests are distinct from his or her best interest,

_____

[1] Mother testified that conception of B.G.T. "took place in Oklahoma" and that "there were two possible fathers" of B.G. II T., "one who is known as 'Jeff'"; "[s]he did not know Jeff's last name nor the name of the other individual" and "does not know where they live." Trial Court Opinion at 2.

in that a child's legal interests are synonymous with the child's preferred outcome, and a child's best interest must be determined by the court); see also In re T.S., 192 A.3d 1080, 1089-93 (Pa. 2018) (a child's statutory right to counsel is not waivable, even where the child is too young or nonverbal to communicate his or her preference; reaffirming the ability of an attorney-guardian ad litem to serve a dual role and represent a child's non-conflicting best interests and legal interests). Mother was present at the hearing and represented by counsel.

At the termination hearing, MCCYS caseworker Shelly Dorfi observed that "there was no bond, emotional or otherwise, exhibited between [M]other and [B.G.T.]." Trial Court Opinion at 3. Additionally, Ms. Dorfi "has observed a strong emotional bond" amongst B.G. II T. and her foster parents but "no bond" between B.G. II T. and Mother. Id. at 4-5. "It was Shelly Dorfi's opinion that the best interest of the [C]hildren would be to terminate all parental rights and move to adoption of the [C]hildren by the [foster parents]." Id. at 5.

Dr. Peter Von Korff testified as an expert in psychology and parent/child bonding. Id. at 9. Dr. Korff stated that he first attempted to evaluate Mother while she was incarcerated in 2017, but she refused to meet with him. Id. at 9-10. Dr. Korff observed Mother "hide under a blanket" instead. Id. at 10. He was eventually able to evaluate her in 2018, while she was residing at Warren State Hospital. Id. Dr. Korff noted that, during the interview, "Mother

appeared sedated, lethargic, had a flat affect, and had difficulty with her memory." Id. "Dr. Von Korff described [Mother's] thought process as distracted" and "her condition as typical of many individuals he had dealt with who have had multiple psychiatric treatments, who had been institutionalized, and who had been on psychiatric medication for years." Id. at 10-11. Dr. Von Korff continued that Mother showed "a 'dogged determination' to have the [C]hildren back, but could not explain a plan to care for them." Id. at 10. Dr. Von Korff concluded that Mother had "chronic and persistent mental health issues which he described as severe[,]" "that she would never be able to parent the [C]hildren[,]" and "that [M]other's mental health issues which existed at the time the [C]hildren were taken from her have not been remedied." Id. at 11. Although he "acknowledged that [M]other's mental condition had improved[,]" Dr. Von Korff concluded "that [M]other did not have a condition that could be remedied and she would need to receive intensive ongoing care." Id. at 11, 13.

Dr. Von Korff also "performed bonding assessments between the foster parents and the [C]hildren" and found that they were "securely bonded." Id. at 12. He further described the foster parents as "competent, knowledgeable, and dedicated to parenting the [C]hildren"; he added that "the bond allowed the [foster] parents to provide the emotional welfare needed to the [C]hildren[.]" Id. He concluded that "there was [a] sufficient bond" and that

"it was in the best interest of the [C]hildren that [they] remain with the foster parents." Id.

Mother testified that she wants "a chance to have her children and to be able to work to get her children back." Id. at 13.

On January 11, 2019, the trial court entered orders involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). The trial court also entered orders involuntarily terminating the parental rights of Children's respective unknown fathers.

On February 5, 2019, Mother filed this timely direct appeal. Although Pa.R.A.P. 1925(a)(2)(i) requires a concise statement of errors complained of on appeal to be filed simultaneously with the notice of appeal in children's fast track appeals, Mother did not file her concise statement until February 20, 2019. Nevertheless, as the trial court was not delayed in writing its opinion and as no party has claimed that they were prejudiced as a result of Mother's procedural mistake, we will not find Mother's issue waived for failure to comply with our procedural rules. See In re N.N.H., 197 A.3d 777, 781 n.6 (Pa. Super. 2018) ("Mother's notice of appeal was defective because she failed to file her concise statement of errors complained of on appeal contemporaneously as required by Pa.R.A.P. 1925(a)(2)(i)"; "no party has claimed that they were prejudiced as a result of Mother's procedural misstep, and we are unaware of any prejudice"; "Mother's error was harmless"); J.P.

v. S.P., 991 A.2d 904, 908 (Pa. Super. 2010) ("we decline to find Mother's issues waived merely for violating the procedural rules outlined in Pa.R.A.P. 1925(a)(2)(i)").

Mother now presents the following issue for our review:

> Whether the [t]rial [c]ourt entered [its] Orders of Court prematurely and/or without sufficient evidence in terminating the parental rights of [M]other to subject children, B. G. T. and B. G. II T.

Mother's Brief at 16.

In her brief to this Court, Mother's argument, in its entirety, is as follows:

> The [trial c]ourt did prematurely enter its Orders of Court in terminating the parental rights of [Mother] to the [C]hildren, B. G. T. and B. G. II T., in that [Mother] avers [Mother] also avers [sic] that the Petitioner, [MCCYS], did not have sufficient evidence to justify the [trial c]ourt's terminating her parental rights with regard to the [C]hildren. [Mother] feels that the fact that Dr. Van Korff noticed an improvement in [M]other's mental health condition between the first interview of December 14, 2017 jailhouse interview [sic] and subsequent November 7, 2018 interview at Warren State Hospital facility and that persons with type of [M]other's mental health condition may be able to parent with strong family support, extensive or intensive mental health treatment. Mother has a "dogged determination" to have her children back and may be able to parent when released from Warren State Hospital in an outpatient setting with extensive or intensive mental health treatment. Mother is diagnosed with Schizoaffective Disorder of the bipolar type with antisocial traits. Mother has not had a meaningful opportunity to be able to parent, as she has been in jail or mental health hospitalization for thirty (30) months during B. G. T.'s life, born December [] 2015 and all of B. G. II T.'s life, born March [] 2018.

Id. at 20-21.

Mother thus does not cite to the record nor to any case law or statutory authority, including failing to specify whether she is challenging the trial court's application of subsections 2511(a)(1), (a)(2), (a)(5), (a)(8), or (b), or some combination of thereof. Absent such support, Mother's argument fails to carry any persuasive weight. Moreover, the failure to support an argument with pertinent authority is a violation of our briefing rules which results in waiver of the unsupported issue. See, e.g., Commonwealth v. Spotz, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development"); In re Estate of Whitley, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities[; t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority" (internal citations and quotation marks omitted)); Lackner v. Glosser, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); Estate of Haiko v. McGinley, 799 A.2d 155, 158-59 (Pa. Super. 2002). Given Mother's failure to support her argument with citations to the record or to any legal authority, we again could find Mother's sole issue waived. However, given the magnitude of an involuntary termination of parental rights,

combined with the fact that both we and the trial court could discern Mother's

ultimate argument, we will address Mother's substantive issue.

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

> The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

> We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act . . .

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

> The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

In re B.J.Z., 2019 PA Super 106, *9-*11 (filed April 4, 2019) (internal citations and quotation marks omitted) (some formatting).

In the current action, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). "We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm." B.J.Z., 2019 PA Super 106, *11. In the current appeal, we affirm the trial court's decision to terminate Mother's parental rights to Children under Section 2511(a)(2) and (b), which provide, in relevant part, as follows:

> (a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: . . .
>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (b) Other considerations.—The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(2), (b).[2]

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.
>
> The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.

In re T.L.C., 199 A.3d 1270, 1278 (Pa. Super. 2018) (internal citations and quotation marks omitted) (some formatting).

In the current matter, the evidence established that Mother has not performed parental duties for either B.G.T. or B.G. II T. since their respective births. Trial Court Opinion at 3, 5. She has failed to provide basics like food and shelter, as well economic and emotional support. Id. She has thus continuously "caused the [C]hild[ren] to be without essential parental

_____

[2] One reason that we have chosen to affirm under 23 Pa.C.S. § 2511(a)(2), is that, unlike some of the other subsections of 2511(a), the legislature did not impose any minimum timeframe for termination under subsection 2511(a)(2). The statutory requisite timeframe outlined in Section 2511(a)(8) is 12 months. 23 Pa.C.S. § 2511(a)(8) (termination may occur when, "12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child"). B.G. II T. was born in March 2018; the termination order was January 11, 2019. Thus, "12 months or more" could not "have elapsed from the date of removal or placement," because B.G. II T. was nine months old at the time of the termination order. Hence, the trial court's finding pursuant to Section 2511(a)(8) was also inappropriate as to B.G. II T. due the minimum timeframe for termination.

care, control or subsistence necessary for [their] physical or mental well-being" pursuant to 23 Pa.C.S. § 2511(a)(2) (emphasis added). See also T.L.C., 199 A.3d at 1278 (first and second elements).

To the extent that we can discern Mother's argument, Mother's Brief at 20-21, she appears to be claiming that, as the expert witness, Dr. Von Korff, testified that her mental health had "improved" since his first meeting with her, Trial Court Opinion at 13, the trial court improperly concluded that her "incapacity . . . cannot or will not be remedied" pursuant to 23 Pa.C.S. § 2511(a)(2). See also T.L.C., 199 A.3d at 1278 (third element). However, Mother's contention ignores other sections of the expert's testimony, which the trial court summarized as follows:

> Dr. Von Korff testified that the best hope for [M]other was that at some point she could rejoin the community but only with a great deal of support but that she would never be able to parent the [C]hildren.
>
> Dr. Von Korff testified that [M]other's mental health issues which existed at the time the [C]hildren were taken from her have not been remedied. The Doctor further opined that [M]other did not have a condition that could be remedied and she would need to receive intensive ongoing care.

Trial Court Opinion at 11 (emphasis added).

Even without Dr. Von Korff's expert opinion, Mother's testimony that she wants "a chance to have her children back and to be able to work to get her children back[,]" id. at 13, and her repeated claims that she "may be able to parent" at some vague point in the future, Mother's Brief at 20, would still be inadequate to preserve her parental rights: "Parental rights are not preserved

by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." In re K.Z.S., 946 A.2d 753, 759 (Pa. Super. 2008). Mother does not provide a date when she anticipates being released from Warren State Hospital or even an approximate timeframe. Cf. In re Z.P., 994 A.2d 1108, 1123 (Pa. Super. 2010) (Father's parental rights terminated when Father found "not capable of meeting the essential needs of a young child and . . . unable to do so within a reasonable time" when he "could not provide an estimated release date" from "pre-release status at Harrisburg Community Corrections"); In re K.J., 936 A.2d 1128, 1134-35 (Pa. Super. 2007) ("record supports termination" where mother's release date from prison "is uncertain" as well as her "future with respect to adequate housing and care for her children is indefinite"). Based on the foregoing, we conclude that there is no merit to Mother's claims that MCCYS failed to establish the elements of 23 Pa.C.S. § 2511(a)(2).

Even though Mother provides no argument pursuant to Section 2511(b), we will briefly address this subsection, because, as noted above, "[o]ur case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights." B.J.Z., 2019 PA Super 106, *10 (emphasis added) (citation omitted).

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. . . . Intangibles such as love, comfort, security, and stability are involved in the inquiry

into the needs and welfare of the child. In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond.

Id. at *11 (internal citations and quotation marks omitted) (some formatting).

In the instant action, Mother has failed to stabilize her mental health or to find appropriate housing. Trial Court Opinion at 6. During the period of time when Mother was neither incarcerated nor in a mental health institution, she lived in a hotel or was transient. Id. Mother thereby has not established that she can or will be able to provide Children with "security" or "stability." See B.J.Z., 2019 PA Super 106, *11.

As for the "determination of the needs and welfare of the [Children] under the standard of best interests of the [Children]," id. at *10 (citation omitted), the MCCYS caseworker opined that "the best interest of the [C]hildren would be to terminate all [of Mother's] parental rights and move to adoption of the [C]hildren by the [foster parents]." Trial Court Opinion at 5. Moreover, Dr. Von Korff testified that "it was in the best interest of the [C]hildren that [they] remain with the foster parents." Id. at 12. Therefore, the evidence established that terminating Mother's parental rights to Children and allowing them to be adopted by their foster parents would be in their best interests. See B.J.Z., 2019 PA Super 106, *10.

Furthermore, as noted above, "[o]ne major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child[.]" Id. (citation omitted). In the instant appeal,

B.G.T. refers to her foster parents as "Mom" and "Dad," while she did not recognize Mother when they met last year. Trial Court Opinion at 3. The caseworker testified that Children had no bond with Mother and that B.G. II T. had "a strong emotional bond" with her foster parents. Id. at 3, 5. Dr. Von Korff likewise testified that Children and their foster parents were "securely bonded" and that this "sufficient" "bond allowed the [foster] parents to provide the emotional welfare needed to the [C]hildren." Id. at 12. Consequently, the evidence established that there is no "emotional bond" between Children and Mother, whereas there was a significant bond between Children and their foster parents. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." B.J.Z., 2019 PA Super 106, *11. As there is no evidence in the instant case of any bond between Mother and Children, the trial court reasonably concluded that no bond existed, and there will be no effect on Children by permanently severing them from Mother. See id. at *10-*11.

For the reasons given above, we find that, "[p]ursuant to 23 [Pa.C.S.] §2511(b), the [trial c]ourt[,] in reaching the determination of terminating [Mother's] rights[,] . . . has given primary consideration to the developmental, physical, and emotional needs and welfare of the [C]hildren." Trial Court Opinion at 25.

Based on the foregoing, we conclude the trial court did not abuse its discretion by terminating Mother's parental rights to Children. See B.J.Z., 2019 PA Super 106, *9. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/2019